General Davie argued, in substance: That by the law of England, where one of two joint defendants could not be found, the plaintiff proceeded to the outlawry against him, and then declared against the defendant that was in court, that he, together with the other, took upon himself and promised, etc. See Stra., 473; 2 Atk., 510, 511. And if in a court of equity the process against the absent defendant was carried on to sequestration, when it appears the plaintiff has done everything in his power, by using the utmost process the law allows to compel the appearance of the absent party, it suffers him to proceed against the other for the whole. By parity of reason, when in this country the court perceives the plaintiff has used the whole series of process that the law allows him to enforce the appearance of a defendant, it will, in like manner, allow him to proceed for the whole against the defendant who is in court. Now, by the act of 1777, ch. 2, sec. 23, when the sheriff returns non est inventus, the plaintiff may take a judicial attachment, or an alias or pluries, at his *Page 225 
election; but the act speaks not of any further process, nor indeed is there any further process which can be used here. The law of outlawry is not in force for want of the proper officers to conduct it. It appears by 5 Com., 241, and by Jacob's Law Dict., which though not a book of authority, seems to have treated of outlawry much at large, and with considerable accuracy, that there must be a fielazer, exigunter, etc., to make out the process necessary at the different stages of the proceeding. Also, the act which puts in force such parts of the English law as are now in use says only such parts of the statute and common law as were before in force and use here and not incompatible with our form of government shall be still in force. But the proceeding to outlawry was never in force here, and therefore is not a part of our law, and by section 12 of the Bill of Rights no man can be outlawed, etc., but by the law of the land; but there is no law in force here for that purpose. If the law of outlawry be not in force here for any of these reasons, then there is (284) no other process that a plaintiff can use but that mentioned in the act of 1777, before-mentioned; and the plaintiff having proceeded to the extent of that process, should be suffered, upon the principles before stated, to proceed against the other.
Baker, e contra: This was not such a case as if it happened in England an outlawry could have been pronounced upon; that outlawry was the puttingextra legem persons who were subject to it, and had taken the oath in the Court Leet (5 Com. Dig., 650), but it was error if pronounced against a subject to another government, and resident out of England, or if out of the realm upon public business. Here, the absent defendant was a citizen of another government, and resided within the limits thereof, so he could not have been outlawed; and if he could not have been outlawed, then, according to the argument on the other side, it was not possible to proceed against the other, the reason why they do not in England proceed against the outlaw being that his property is forfeited to the King, so that there is nothing for the plaintiff; but until the outlawry takes place there is a possibility of recovering something against him as well as against the other, and if the absent defendant is under such circumstances that judgment of outlawry in England could not be pronounced against him, I apprehend there can be no proceeding against the other until the absent defendant be actually brought in, for in England they never proceed against the arrested defendant till it appears by the outlawry there is no possibility of making the other enter into the defense with him. Indeed, our act of Assembly seems to contemplate no other end of process than the taking the defendant, for it directs the alias and pluries to go till the party be arrested. See 1777, ch. 2, sec. 78. *Page 226 
The judicial proceedings of this country have never recognized the law of outlawry previous to the Revolution, and therefore that part of the law of England cannot be considered to be in force here at this day. The words of the act are that all such statutes, and such parts of the common law as were here before in force and use within this territory, etc., and so much of the said statutes, common law, etc., as are not destructive of, repugnant to, or inconsistent with the freedom and independence of this State, and the form of government therein established, and which have not been otherwise provided for, etc., are hereby declared to be in full force; but this part of the common law having (285) never been used here before the Revolution, cannot within the terms of this act be now received here as law, though there is nothing in the Constitution to repel such a law, should the Legislature think proper to establish it; on the contrary, the Constitution admits the possibility of outlawing a citizen. Declaration of Rights, sec. 12, "No man shall be outlawed but by the law of the land." This implies he may be outlawed servato juris ordine. But although a man may not be outlawed here, yet there is the same reason in certain circumstances for allowing the plaintiff to proceed against one of two defendants in court, where the other cannot be taken, as if it were the practice to outlaw the absent defendant. The true reason why in England after outlawry the law allows a proceeding against the defendant who is taken is not because the property of the other is forfeited, but because lex nemini coget ad impossibilia. It requires both to be sued if possible, that both may bear their equal burden of the contract they have jointly undertaken to perform. It is for the benefit of the defendant who is in court and amenable that this is required. When it appears to the Court, however, to be impossible for the plaintiff to bring both into court, the law will no longer require this of him, for that would be to require an impossibility, and to defeat the plaintiff of his just demand. Although from the nature of the contract each defendant was answerable in solidum, this would be unjust; and the law does not require it after it hath become evident that the plaintiff cannot arrest both. In England this impossibility is evidenced by the outlawry, the utmost process that the law knows and the plaintiff hath in his power to use. So in this country the law will require the plaintiff to proceed against both upon a joint undertaking, that both may be contributory to the performance of this joint contract, until the plaintiff hath procured legal evidence that it is out of his power to enforce the attendance of some one of them or more; and by analogy, this should seem to be effected here by the last process that the law has provided, the pluries, or the attachment, etc. Though this is a point not expressly decided in this State since the Revolution, yet the constant opinion and practice of the bar *Page 227 
hath been, etc., and it seems extremely reasonable; otherwise one defendant, by withdrawing himself, might forever prevent a recovery against his codefendant. This would be a serious mischief, indeed. Many defendants would avail themselves of it immediately. Our (286) vicinity to other states would make it the easiest matter in the world to be practiced, and a decision of that kind would occasion the loss of many just debts and demands. If it were necessary in order to support this opinion to show that this is such a case as an outlawry would lie in supposing it to have happened in England, it is sufficient to say that it is totally immaterial whether the outlawry would be erroneous or not, for the reasons mentioned by the defendant's counsel, or for any other reasons, an erroneous outlawry remains good till reversed by the party; and before he can be admitted to have his writ of error, he must appear and put in bail to the suit. L. Ray., 349; 2 Salk., 496. And then the purposes of the plaintiff's proceeding to outlawry are satisfied. But there is no necessity to resort to this consideration. The plaintiff here has used the utmost process that the law allows him; he has, therefore, done everything in his power which the law required of him, and he must now be suffered to proceed against the other defendant; otherwise, he would be without any remedy. This would be to carry the rule in favor of the defendant much further than the reason of the rule will allow of. It never meant to deprive the plaintiff of his debt when both could not be taken, but only to prevent him from proceeding against one only when both might be taken.
Judgment for the plaintiff.
See Anonymous, 3 N.C. 70. Where one defendant is taken, and an alias
and pluries against the other defendant returned "Not found," the defendant taken shall be allowed to plead to the action, and the plaintiff shall come to issue as to him. Price v. Scales, 6 N.C. 199.